IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TAMI LEITING-HALL and ASHLEY DANKLEFF, individually, and on behalf of all others similarly situated, | ) ) ) | CASE NO. 4:14-cv-03155 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | DEFENDANTS' BRIEF IN |
| | ) | OPPOSITION TO AMENDED |
| KERRY WINTERER, as Chief Executive | ) | MOTION FOR CLASS |
| Officer of the Nebraska Department of | ) | CERTIFICATION |
| Health and Human Services, and | ) | |
| THOMAS PRISTOW, as Director of the | ) | |
| Division of Children and Family Services, | ) | |
| | ) | |
| Defendants. | ) | |

## Table of Contents

INTRODUCTION ........................................................................................................ 2

ARGUMENT ............................................................................................................... 3

   I.    A SUBSTANTIAL NUMBER OF THE PROPOSED CLASS MEMBERS LACK STANDING. ................................................................................................... 5

   II.   THE PLAINTIFFS' PROPOSED CLASS IS NOT REASONABLY ASCERTAINLABLE BECAUSE THE COURT WOULD BE REQUIRED TO RESORT TO LENGTHY, INDIVIDUALIZED INQUIRIES IN ORDER TO IDENTIFY CLASS MEMBERS AND BECAUSE THE TIME PARAMETER IS UNJUSTIFIABLY BROAD. ... 6

      A.   Individualized inquiries. ............................................................................ 6

      B.   Time parameter. ...................................................................................... 10

   III.  THE PROPOSED CLASS LACKS COMMONALITY BECAUSE THE RESOLUTION OF THE COMMON LEGAL ISSUE OF TIMELINESS IS DEPENDENT UPON FACTUAL DETERMINATIONS OF FAULT THAT WILL BE DIFFERENT FOR EACH PROPOSED CLASS MEMBER. ................................................................ 12

   IV.  THE NAMED PLAINTIFFS' CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF THE PROPOSED CLASS BECAUSE A MAJORITY OF THE CLASS MEMBERS HAVE SUFFERED NO INJURY AND BECAUSE THE CRUCIAL INQUIRY INTO ANY TYPICAL GRIEVANCE REQUIRES INDIVIDUALIZED ANALYSIS. ............................ 19

   V.   CLASS ACTION UNDER FED. R. CIV. P 23(b)(2) IS NOT NECESSARY TO ACHIEVE THE PLAINTIFFS' DECLARATORY AND INJUNCTIVE RELIEF FOR THE NAMED PLAINTIFFS AS WELL AS ALL THOSE SIMILARLY SITUATED. ................. 21

CONCLUSION ......................................................................................................... 23

## INTRODUCTION

Named Plaintiffs, as proposed class members, have filed a motion seeking class certification under Fed. R. Civ. P. 23 (Filing No. 20).  Named Plaintiff Tami Leiting-Hall on or about June 16, 2014, submitted a recertification application for the Supplemental Nutrition Assistance Program (hereinafter, "SNAP"). *See* (Filing No. 19, Pls.' Am. Compl. p 12, ¶ 65). Named Plaintiff Ashley Dankleff on or about June 13, 2014, submitted an initial application for SNAP. *See* (*Id*. at p 13, ¶ 71).   Plaintiffs allege that their respective recertification and application were not timely processed. (*Id*. at p 4, ¶ 14).  Plaintiffs seek class certification under the following class definition:

> All Nebraska residents who, since January 1, 2012, have applied, are applying, or will apply for Supplemental Nutrition Assistance Program (SNAP) benefits from the Nebraska Department of Health and Human Services through an initial and/or recertification application.

(Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10).  Plaintiffs assert their claims for relief under the Food and Nutrition Act, 7 U.S.C. § 2011 et seq., (hereinafter "Act"), and the federal civil rights enforcement statute, 42 U.S.C. § 1983 (hereinafter, "§ 1983"). The Plaintiffs' proposed class does not, and cannot, satisfy the requirements of Fed. R. Civ. P. 23.

Defendants Kerry Winterer, in his official capacity, and Thomas Pristow, in his official capacity, (hereinafter, "the State") hereby submit the following Brief in Opposition to the Plaintiffs' Amended Motion for Class Certification.

## ARGUMENT

Plaintiffs' Motion for Class Certification should be denied because Plaintiffs' proposed class fails to satisfy the implicit and explicit requirements for class certification.  Rule 23(a) of the Federal Rules of Civil Procedure ("Rule 23") provides:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)  the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact **common** to the class;

(3)  the claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).

Rule 23 requires that, in addition to the conjunctive elements in Rule 23(a), one of the elements of Rule 23(b) must be met. Fed. R. Civ. P. 23(b).  Plaintiff has elected to proceed under 23(b)(2). *See* (Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1).  Rule 23(b)(2) provides:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . .

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . . .

Fed. R. Civ. P. 23(b)(2).

3

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).  "To be certified as a class, plaintiffs must meet all of the requirements of *Rule 23(a)* and must satisfy one of the three subsections of *Rule 23(b).*" *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1119 (8th Cir. 2005). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374, 390 (2011) (internal quotation marks omitted).  Furthermore, "[t]hough class certification is not the time to address the merits of the parties' claims and defenses, 'rigorous analysis' under Rule 23 must involve consideration of what the parties must prove." *Elizabeth M., v. Montanez*, 458 F.3d 779, 786 (8th Cir., 2006).

In addition, several non-rule factors are taken into consideration when certifying a class. Pertinent here, the question of standing applies to classes. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010).  A class also must be ascertainable. *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n. 3 (8th Cir. 1972) (vacated as moot by *Northern States Power Co. v. Ihrke*, 409 U.S. 815, 93 S. Ct. 66 (1972)) (internal quotation marks omitted).  Finally, proceeding as a class action under Rule 23(b)(2) must serve a "useful purpose." *Ihrke,* 459 F.2d at 572. *See also* Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1785.2 (3d ed.).

In the instant case, the numerosity requirement, Fed. R. Civ. P. 23(a)(1); and the adequate representation requirement, Fed. R. Civ. P. 23(a)(4); are not at issue as those factors are not being challenged by Defendants..

Nevertheless, the proposed class fails in several respects.  First, a large majority of the members of the proposed class lack standing.  Second, the class is not ascertainable because

determining the fault behind delays in application processing would require individualized inquiry and because the time frame fails to conform to Plaintiffs' substantive allegations. Third, the class fails to exhibit commonality because the resolution of a common legal issue is dependent upon factual determinations that will be different for each proposed class member. Fourth, the class fails to exhibit typicality because a majority of the class members have suffered no injury whatsoever and because the crucial inquiry into any typical grievances requires individualized analysis of fault for each class member's specific case. Finally, class certification under Rule 23(b)(2) in this instance would be an unnecessary complication because any equitable relief that might be granted that is not specific to the named Plaintiffs automatically would accrue to the named Plaintiffs and those similarly situated even without the certification of a class. Plaintiffs' failure to satisfy *any one of the elements* is fatal to their Amended Motion. Plaintiffs' Amended Motion should be denied.

## I.    A SUBSTANTIAL NUMBER OF THE PROPOSED CLASS MEMBERS LACK STANDING.

The proposed class cannot be certified because the vast majority of the members of the proposed class plainly lack standing. "The 'irreducible constitutional minimum of standing requires a showing **of injury in fact** to the plaintiff that is fairly **traceable to the challenged action of the defendant**, and likely to be redressed by a favorable decision.'" *Avritt*, 615 F.3d at 1034 (emphasis added). "The constitutional requirement of standing is equally applicable to class actions." *Id*. "Although federal courts 'do not require that each member of a class submit evidence of personal standing,' **a class cannot be certified if it contains members who lack standing**." *Id*. (emphasis added) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006)). "A class 'must therefore be defined in such a way that anyone within it would have

standing.' . . . Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves." *Id*. (internal citation omitted).

It cannot seriously be argued that *all* Nebraska residents who have applied, are applying, or will apply for SNAP benefits have suffered an injury in fact fairly traceable to the State's challenged conduct. Plaintiffs have proposed the following class: "**All** Nebraska residents who, since January 1, 2012, have applied, are applying, or will apply for [SNAP benefits]. . . ." (Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1) (emphasis added). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10). Plaintiffs allege that the challenged conduct of the State of Nebraska here is the State's "failure or refusal to process . . . SNAP applications and to provide SNAP benefits in the [mandated] time frames. . . ." (Filing No. 19, Pls.' Am. Compl. p 1, ¶ 2). However, Plaintiffs allege that approximately 69% of Nebraska SNAP applications in Federal Fiscal Year 2013 were processed timely. (*Id*. at p 2, ¶ 3). Even accepting Plaintiffs' allegations as true for the purposes of this argument only, it seems likely that a vast majority of applicants have experienced **no improper delay** whatsoever. Therefore, even if untimeliness were a valid proxy for injury, an apparently vast majority of the proposed class members have suffered **no injury** fairly traceable to the challenged conduct of the State of Nebraska in this case. The overwhelming majority of class members who have suffered no injury plainly lack standing.

Because the proposed class is substantially composed of members who plainly lack standing, the class cannot be certified. The State of Nebraska respectfully requests this Court to deny Plaintiffs' Motion for Class Certification.

## II.     THE PLAINTIFFS' PROPOSED CLASS IS NOT REASONABLY ASCERTAINABLE.

### A.     Individualized inquiries.

6

The proposed class is not ascertainable because the Court would be required to resort to lengthy, individualized inquiries in order to identify class members.  "'It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Ihrke,* 459 F.2d 566, 573 n. 3.  "To ascertain the class, '[t]he Court should not be required to resort to speculation, or engage in lengthy, individualized inquiries in order to identify class members.'" *In re Principal U.S. Prop. Account Erisa Litig.*, 2013 U.S. Dist. LEXIS 185665 at (S.D. Iowa Sept. 30, 2013) at *102 (citing *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 361 (S.D. Iowa 2008)) (class certification denied where "actions taken by individual investors impact the determinations as to class membership, liability, and damages."). **"**Certification is not appropriate where the court would be required to engage in fact-intensive individualized analysis to identify class members." *Henke v. Arco Midcon, LLC*, 2014 U.S. Dist. LEXIS 31810 at *14-15 (E.D. Mo. Mar. 12, 2014) (citing *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981); *Adair v. Johnston*, 221 F.R.D. 573, 577-79 (D. Ala. 2004); *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y.2001)).

In this case, the Court would be required to resort to fact-intensive individualized analysis to identify class members.  Plaintiffs have proposed the following class: "**All** Nebraska residents who, since January 1, 2012, have applied, are applying, or will apply for [SNAP benefits]. . . ." (Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1) (emphasis added). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10).  Plaintiffs allege the following State conduct: "Defendants' failure to **timely** process initial and renewal applications for and to provide SNAP benefits to eligible households, as required by federal SNAP statutes and implementing regulations." (Filing No. 19, Pls.' Am. Compl. p 2, ¶ 4) (emphasis added).   Plaintiffs have requested the following relief: "Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants, in their

official capacities, from failing to **timely** process initial and renewal SNAP applications and to provide SNAP benefits to eligible households within the mandated time frames." (*Id*. at p 2, ¶ 5) (emphasis added). Delays in processing applications that are the fault of the applicant are excepted from determinations of timeliness in SNAP cases. (Filing No.28, Ex. 1).

Because fault is the crucial inquiry to determine class membership, the proposed class is not sufficiently ascertainable. DHHS recognizes that the Act and implementing regulations require timely processing of applications and recertifications. *See* 7 U.S.C. § 2020(e)(3) and (4); 7 CFR 273.2(g); 7 CFR 273.14(c). However, fault, and not mere timeliness, is the crucial inquiry. For original applications, once processing has been deemed untimely, a detailed fault-finding mechanism has been established to place fault on either the household or the state agency: "If the State agency does not determine a household's eligibility and provide an opportunity to participate within 30 days following the date the application was filed, the State agency shall . . . **first determine the cause of the delay** using the following criteria." 7 CFR 273.2(h)(1) (emphasis added). The criteria determine whether the delay was the fault of the household, 7 CFR 273.2(h)(1)(i), or the fault of the agency. 7 CFR 273.2(h)(1)(ii). For recertifications, the same fault-finding process is used: "The State agency shall determine cause for any delay in processing a recertification application in accordance with the provisions of § 273.3(h)(1) [sic]." 7 CFR 273.14(e). Finally, the regulations are clear that untimely processing that is the fault of the household does not obligate the agency to take any further action. 7 CFR 273.2(h)(2)(i)(A).

The regulations embody the common sense notion that only applicants who have not caused their own delays are entitled to a remedy. A mere finding of untimeliness is insufficient

to demonstrate that the State's conduct has resulted in an injury.  Consequently, fault, and not timeliness, is the proper indicator of class membership.

Not surprisingly, determining fault is a fact-intensive inquiry.  Fault depends upon the household's failure to complete the application process, including: failing to complete the application form, 7 CFR 273.2(h)(1)(i)(A); failing to register for work, unless household members are exempt from work registration, 7 CFR 273.2(h)(1)(i)(B); or providing incomplete verification,  7 CFR 273.2(h)(1)(i)(C).  In addition, missing a scheduled interview may result in fault being attributed to the household based on a fact-intensive inquiry into the household's actions. 7 CFR 273.2(h)(1)(i)(D).  First, if the household misses the first interview and fails to schedule a second interview, the household is at fault. *Id*.  Second, if the household misses the first interview and schedules a second interview, but the subsequent interview is postponed at the request of the household, the household is at fault unless the household appears for interview; brings verification; and registers members for work by 30th day following application. *Id*.  Third, if the household misses the first interview and schedules a second interview, but the second interview cannot be scheduled until after the 20th day following the date of application but before the 30th day following the date of application, the household is at fault unless the household appears for the interview; brings verification; and registers members for work by 30th day following the date of application. *Id*.  Fourth, if the household misses the first interview and schedules a second interview, but the second interview cannot be scheduled until after the 30th day following the date of application, then the household is at fault. *Id*.  Finally, the household is at fault if the household misses first and second interviews and requests a third interview. *Id*.

Despite the foregoing, fault can be assigned to the household only if the state agency has taken the actions required of the agency in 7 CFR 273.2(h)(1)(i)(A) through (D). 7 CFR

273.2(h)(1).  For example, even if the household misses its first interview, if the state agency fails to notify the household of its missed interview, 7 CFR 273.2(h)(1)(i)(D), then the household could not be considered to be at fault for any delay resulting from the missed interview. Ultimately, the detailed fault analysis demanded by the regulations demonstrates that determining the fault of each class member would require repeated, lengthy, fact-intensive inquiries.

In order for the Court to ascertain a class properly based on fault, it would have to engage in a lengthy, individualized inquiry into each potential class member's actions in filing his or her application or recertification.  Only those class members who were not at fault for the untimeliness of processing are proper class members, but such a fault-based class is unascertainable.  Because the class is unascertainable, class certification should be denied.

**B.     Time frame.**

The time frame of Plaintiffs' proposed class is overly broad because it fails to conform to the substantive allegations of Plaintiffs' Amended Complaint.  "[I]mportant elements of defining a class include: (1) specifying a particular group at a **particular time frame** and location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner." *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000) (emphasis added).  **"**Though class certification is not the time to address the merits of the parties' claims and defenses, the 'rigorous analysis' under *Rule 23* must involve **consideration of what the parties must prove**." *Elizabeth M.*, 458 F.3d at 786 (emphasis added).

The temporal definition of the Plaintiff's proposed class does not correspond to and is not consistent with the Plaintiffs' substantive allegations.  Plaintiffs have proposed the following

class: "All Nebraska residents who, **since January 1, 2012**, have applied, are applying, or will apply for [SNAP benefits]. . . ." (Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1) (emphasis added). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10). Plaintiffs allege that "Nebraska had an overall application processing timeliness rate of 69.03%[1] for **federal fiscal year 2013**." (Filing No. 19, Pls.' Am. Compl. p 2, ¶ 3) (emphasis added). The actions complained of by the named Plaintiffs occurred beginning in June through at least July, 2014, for Plaintiff Leiting-Hall, (*Id.* at pp 12-13, ¶¶ 63-69), and in June through at least August, 2014, for Plaintiff Dankleff. (*Id.* at pp 13-15, ¶¶ 71-83).

"The fiscal year of the Treasury begins on October 1 of each year and ends on September 30 of the following year." 31 U.S.C. § 1102. Thus, Federal Fiscal Year 2012 began on October 1, 2011, and ended on September 30, 2012. Federal Fiscal Year 2013 began on October 1, 2012, and ended on September 30, 2013. Federal Fiscal Year 2014 began on October 1, 2013, and ended on September 30, 2014. Federal Fiscal Year 2015 began on October 1, 2014.

Plaintiffs' temporal definition of the proposed class extends beyond Plaintiffs' specific substantive allegations. The named Plaintiffs' alleged injuries occurred in Federal Fiscal Year 2014 and/or 2015. Plaintiffs purport to present evidence to support extending its class into Federal Fiscal Year 2013. *See* (Filing No. 22-2, Pls.' Att'y Decl. Supp. Am. Mot. Class Cert., Ex. 2, p 6). However, Plaintiffs seek to certify a class composed of members with alleged injuries dating back to Federal Fiscal Year 2012. Plaintiffs have provided no justification for extending the class into Federal Fiscal Year 2012. Plaintiffs' have extended their class beyond their substantive allegations.

It should also be noted that since there is no realistic way to provide retroactive relief under Plaintiffs' theory of the case and their requested relief, which is equitable in nature,

---

[1] The correct percentage is 69.30%.

proposing a class definition including past applicants from 2012 is simply untenable.  Assuming arguendo that the Plaintiffs succeeded in obtaining the requested declaratory and injunctive relief, it is clear that they could only obtain prospective relief.  Under those circumstances proposing a class which includes past applicants going back to 2012 is unjustified and improper.

It is also noteworthy that the unrestricted and vague future element of the proposed class definition, those who "will apply", is imprecise and does not admit of clearly ascertaining who would be included in this future group of applicants.

The temporal dimensions of Plaintiffs' proposed class is unjustifiably broad because the class extends beyond the time boundaries of its substantive allegations.  The Plaintiffs' Amended Motion for Class Certification should be denied.

## III.   THE PROPOSED CLASS LACKS COMMONALITY BECAUSE THE RESOLUTION OF THE COMMON LEGAL ISSUE OF TIMELINESS IS DEPENDENT UPON FACTUAL DETERMINATIONS OF FAULT THAT WILL BE DIFFERENT FOR EACH PROPOSED CLASS MEMBER.

Class certification is inappropriate because the resolution of the common legal issue of timeliness is dependent upon factual determinations of fault that will be different for each proposed class member.  Under Rule 23, one or more members of a class may sue or be sued as representative parties on behalf of all class members if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "At a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir., 1998).  However, Rule 23 requires more than an abstract and general claim in order to render proposed class members claims common.

12

Specifically, Rule 23 requires "a common issue the resolution of which will advance the litigation." *Sprague*, 133 F.3d at 397.

> Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable **in the same manner** to each member of the class."  For in such cases, "the class-action device **saves the resources of both the courts and the parties** by permitting an **issue potentially affecting every [class member]** to be litigated in an **economical fashion** under Rule 23.

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 2369 (1982) (internal citations omitted) (emphasis added) (alteration in original) (citing *Califano* v. *Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557) (1979)).  "Factual differences are not fatal if common questions of law exist." *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971).  "For a common question of law to exist, the proposed class must share a discrete legal question of some kind." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1289 (10th Cir., 1999).  The federal courts "refuse to read an allegation of systemic failures as a moniker for meeting the class action requirements." *Id.*  Furthermore, "[w]hen the resolution of a common legal issue is **depend[e]nt upon factual determinations that will be different for each purported class plaintiff** . . . courts have consistently refused to find commonality and have declined to certify a class action." *Egge v. Healthspan Services Company*, 208 F.R.D. 265, 268 (D. Minn., 2002) (emphasis added).

In the instant case, the factual situations of each person applying for or seeking recertification for SNAP benefits typically differ significantly. *See*, Affidavit of Jill Schreck (Filing No. 28, Ex. 1).  Plaintiffs seek class certification under the following class definition:

> All Nebraska residents who, since January 1, 2012, have applied, are applying, or will apply for Supplemental Nutrition Assistance Program (SNAP) benefits from the

Nebraska Department of Health and Human Services through an initial and/or recertification application.

(Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10). Plaintiffs "challenge Defendants' failure to **timely** process initial and renewal applications for and to provide SNAP benefits to eligible households, as required by federal SNAP statutes and implementing regulations." (Filing No. 19, Pls.' Am. Compl. p 2, ¶ 4) (emphasis added).

The regulations demonstrate the various factual scenarios that may affect the timing of the application or recertification process. To begin with, for processing original applications, there are a variety of timing considerations: 7 day processing period from date of filing if an applicant is eligible for "expedited processing," 7 CFR 273.2(i); 30 day processing from date of filing for "normal processing," 7 CFR 273.2(g); or 30 day processing from date of release for applicants who are in a public institution and also applying for SSI. 7 CFR 273.2(g); 273.1(e)(2).

Similarly, for processing recertifications, the timing of the agency's process depends upon the household's original certification period: 30 days after last allotment for one month original certification period, 7 CFR 273.14(c)(1) and (c)(3); same for two month original processing period, 7 CFR 273.14 (c)(1); or within normal issuance cycle for "other" processing periods. 7 CFR 273.14(c)(2). In addition, households consisting entirely of SSI applicants or those filing for recertification at SSA offices have a special timing rule. 7 CFR 273.14(c)(4).

Additionally, the common legal issue of timeliness of processing of applications and recertifications depends upon a separate determination of fault *in each case*. For original applications, "[i]f the State agency does not determine a household's eligibility and provide an opportunity to participate within 30 days following the date the application was filed, the State

14

agency shall . . . **first determine the cause** of the delay using the following criteria." 7 CFR 273.2(h)(1) (emphasis added). The criteria determine whether the delay was the fault of the household, 7 CFR 273.2(h)(i), or the fault of the agency. 7 CFR 273.2(h)(1)(ii). Finally, the regulations are clear that untimely processing that is the fault of the household does not obligate the agency to take any further action. 7 CFR 273.2(h)(2)(i)(A). Even if untimeliness were a common thread running through the class, a mere finding of untimeliness is insufficient to demonstrate that the State's conduct has resulted in an injury. The crucial inquiry is fault, and fault depends on factual determinations that will be *different for each proposed class member*.

As described in detail above, fault analysis is necessarily fact-intensive. Household fault depends on determining any one of a number of household actions, including whether the household failed to complete the application form, 7 CFR 273.2(h)(1)(i)(A); failed to register for work, unless household members are exempt from work registration, 7 CFR 273.2(h)(1)(i)(B); provided incomplete verification, 7 CFR 273.2(h)(1)(i)(C); or failed to meet the interview requirement. 7 CFR 273.2(h)(1)(i)(D). Furthermore, agency inaction may operate as a bar to household fault. 7 CFR 273.2(h)(1).

Moreover, the remedies that the State is required to take vary depending on the determination of fault. For instance, where a household is at fault, an application may be considered untimely, yet the household may nevertheless lose its entitlement to only certain benefits: "If by the 30th day the State agency cannot take any further action on the application due to the fault of the household, the household shall lose its entitlement to benefits for the month of application." 7 CFR 273.2(h)(2)(i). Although the household loses the month-of-application benefits, the household still has the opportunity to cure its fault:

> the State agency shall give the household an additional 30 days to take the required
> action, except that, if verification is lacking, the State agency has the option of holding
> the application pending for only 30 days following the date of the initial request for the
> particular verification that was missing.

7 CFR 273.2(h)(2)(i).  If the household has not cured its fault, the agency has the option of
sending a notice of denial or a notice of pending status on the thirtieth day.  7 CFR
273.2(h)(2)(i)(A).  After the sixtieth day of uncured household fault, the agency has no further
obligation:

> No further action by the State agency is required after the notice of denial or pending
> status is sent if the household failed to take the required action within 60 days following
> the date the application was filed, or if the State agency chooses the option of holding the
> application pending for only 30 days following the date of the initial request for the
> particular verification that was missing, and the household fails to provide the necessary
> verification by this 30th day.

*Id*.  Alternatively, even if household fault is cured during the second 30-day period, the
household still forfeits month-of-application benefits:

> If the household was at fault for the delay in the first 30-day period, but is found to be
> eligible during the second 30-day period, the State agency shall provide benefits only
> from the month following the month of application. The household is not entitled to
> benefits for the month of application when the delay was the fault of the household.

7 CFR 273.2(h)(2)(ii).  Finally, if the delay extends beyond sixty days, and the initial delay was
due to household fault, the household is entitled to benefits retroactive only to the second thirty-
day period. 7 CFR 273.2(h)(4)(i).

16

On the other hand, where untimeliness is the fault of the agency, the household may be eligible for month-of-application benefits if the household ultimately is determined to be eligible during the second thirty-day period. 7 CFR 273.2(h)(3)(ii).  However, even if the untimeliness is the fault of the agency, if the household is ultimately deemed ineligible within the second thirty-day period, the application shall be denied. *Id*.  Where the delay extends beyond sixty days due to the agency's fault, and the agency also was at fault for the delay in the first thirty days, the household is entitled to month-of-application benefits. 7 CFR 273.2(h)(4)(i).

Where delay extends beyond sixty days due to the agency's fault, the agency may deny the application or continue to process the application. 7 CFR 273.2(h)(4)(ii).  If denied but the household files a later application, the household may be entitled to benefits due to the delay, depending on who was at fault for the first thirty-day delay: if the agency was at fault for the first thirty days, then entitlement is calculated from month-of application; if the household was at fault, then entitlement is computed from second thirty-day period. 7 CFR 273.2(h)(4)(ii).

Recertifications are subject to the same fault-finding process as original applications: "The State agency shall determine cause for any delay in processing a recertification application in accordance with the provisions of § 273.3(h)(1) [sic]." 7 CFR 273.14(e)(1) and (2).  If the household filed before the end of the certification period, and if agency fault caused a delay beyond the 30 day processing time, then the household is entitled to the allotment for the first month of the new certification period. 7 CFR 273.14(e)(1).

If the household filed before the end of the certification period but failed to take a required action (i.e., household fault), then the agency may deny the recertification at that time, at the end of the certification period, or at the end of 30 days. 7 CFR 273.14(e)(2).  Regardless of the denial, if the household completes its action before the end of the certification period, the

agency must reopen the case, and the household is entitled to the full allotment for the first month of the new certification period. *Id*. If the household completes the action after the end of the certification period but within 30 days after the ending of the certification period, the agency must reopen the case, and the benefits are prorated to the date of completion of the action. *Id*. Although not expressly so stated, the natural consequence of 7 CFR 231.14(e)(2) is that if household fault causes denial as under 7 CFR 231.14(e)(2), and if that fault is not cured by filing within the required timeframes, then the case remains closed and no remedy accrues to the household. *Id*.

The regulatory analysis above demonstrates that fact-dependent fault analysis is required in order to determine the appropriate timing relevant to any one case as well as the appropriate remedy available to any person submitting an application or recertification. A mere finding of *untimeliness* under the general timing provisions is insufficient to determine the proposed class members' rights. Instead, any determination of the rights and remedies of proposed class members' depends wholly upon a determination of *fault* in each instance. Based on our discussion, it is clear that an application that is considered "untimely" because it was not processed within 30 days could result in any number of outcomes depending on the underlying facts of the delay, including a finding that the agency's delay is excused because the household was at fault for the delay. It simply cannot be said that the relevant inquiry into fault "turn[s] on questions of law applicable in the same manner to each member of the class." *Falcon*, 457 U.S. at 155, 102 S. Ct. at 2369 (emphasis added).

Plaintiffs take a bird's eye view of the issue presented here. However, in order to resolve the common issue of timeliness, it would be necessary to descend from the clouds into the regulatory thicket. The fault finding analysis and consequent remedial analysis that is required

18

to determine each class member's rights relevant to the timeliness standard does not represent an economical use of judicial resources. *Falcon*, 457 U.S. at 155, 102 S. Ct. at 2369.  Because determination of the common legal issue of timeliness is insufficient on its own to advance the litigation here, Plaintiffs fail to satisfy the commonality requirements of Fed. R. Civ. P. 23(a)(2). Plaintiffs' Amended Motion for Class Certification should be denied.

## IV.   THE NAMED PLAINTIFFS' CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF THE PROPOSED CLASS.

The named Plaintiffs' claims are not typical of the claims of the class because a majority of the proposed class members have suffered no injury whatsoever and because the crucial inquiry into any typical grievances requires individualized analysis of fault for each class member.  Under Rule 23, one or more members of a class may sue or be sued as representative parties on behalf of all class members if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157, n. 13, 102 S. Ct. at 2370, n. 13.   Both the commonality and typicality requirements of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical. . . ." *Id*.  "[T]he typicality provision requires a demonstration that there are other members of the class who have the **same or similar grievances** as the plaintiff. . . .  This requirement was adopted as the law of this Circuit. . . ." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977), cert. denied, 434 U.S. 856, 98 S. Ct. 177 (1977) (internal citations omitted).  "When the claim arises out of the **same legal or remedial theory**, the presence of factual variations is normally not sufficient to preclude class action treatment." *Id*. at 831 (emphasis added).  "However, the plaintiff cannot show typicality where the question of liability

19

can only be ascertained on an **individualized inquiry for each class member**." *Gomez v. Tyson Foods, Inc.*, 2010 U.S. Dist. LEXIS 142440 at *21 (D. Neb. Dec. 17, 2010) (citing *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1004-05 (8th Cir. 2004)) (emphasis added).

First, the named Plaintiffs' claims cannot possibly be typical of this all-encompassing proposed class.  Plaintiffs have proposed the following class: "**All** Nebraska residents who, since January 1, 2012, have applied, are applying, or will apply for [SNAP benefits]. . . ." (Filing No. 20, Pls.' Am. Mot. Class Cert. p 1, ¶ 1) (emphasis added). *See also* (Filing No. 19, Pls.' Am. Compl. p 3, ¶ 10).  However, as discussed above, it cannot seriously be contended that *all* applications or recertifications have been untimely. *See* (Filing No. 19, Pls.' Am. Compl., p 2, ¶ 3).  Therefore, even assuming for the sake of argument in the context of this Motion only that named Plaintiffs' factual allegations of delay in their cases are true, the named Plaintiffs cannot reasonably be understood to be typical of those who experienced no delay whatsoever.  Because a large majority of the proposed class members do not share a similar grievance with the named Plaintiffs, Plaintiffs' proposed class is not typical of the named Plaintiffs' claims.

Second, typicality cannot be established because the crucial inquiry of fault requires an individualized inquiry for each class member.  Plaintiffs' allegations are framed in terms of timeliness: Plaintiffs challenge "Defendants' failure to **timely** process initial and renewal applications for and to provide SNAP benefits to eligible households, as required by federal SNAP statutes and implementing regulations." (Filing No. 19, Pls.' Am. Compl. p 2, ¶ 4) (emphasis added).  As discussed in detail above, timeliness is not the crucial inquiry here. Instead, a determination of fault is required in order to determine whether any unlawful conduct occurred.  Furthermore, fault is the common thread that is necessary to determine the extent, if

20

any, of the appropriate entitlement.  However, fault-finding requires an individualized inquiry for each proposed class member.

It cannot be ignored that Plaintiffs' proposed class is not limited by *any* concept of grievance, let alone fault.  Plaintiffs' proposed class includes every past, present, and future applicant regardless of the presence of a grievance.  Therefore, Plaintiffs' proposed class must fail on its face for lack of describing any typical grievance.

However, even if the class were to be properly described in terms of a common grievance, any common grievance in the final analysis depends on a determination of fault.  In turn, the determination of fault depends on an individualized inquiry into the factual circumstances of *each proposed class member*.  Because any viable class would depend on individualized inquiries, Plaintiff cannot satisfy the requirement of typicality.  Plaintiffs' Amended Motion should be denied.

## V.    A CLASS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2) IS NOT NECESSARY TO ACHIEVE THE PLAINTIFFS' DECLARATORY AND INJUNCTIVE RELIEF FOR THE NAMED PLAINTIFFS AS WELL AS ALL THOSE SIMILARLY SITUATED.

This Court should exercise its discretion to decline to certify the proposed class because a class action under Fed. R. Civ. P. 23(b)(2) is not necessary to achieve the Plaintiffs' declaratory and injunctive relief for the named Plaintiffs as well as for all those similarly situated.  It has long been recognized in the Eighth Circuit that where "[n]o useful purpose would be served by permitting this case to proceed as a class action," a court may decline to certify the class. *Ihrke*, 459 F.2d at 572.  Even when "plaintiffs may fulfill all the requirements for a class action," where "[t]he relief requested by the plaintiffs if granted will be identical regardless of whether or not a

class action is maintained," a court may decline to certify the class. *Nelson v. Likins*, 389 F. Supp. 1234 (D. Minn. 1974) (*aff'd on other grounds,* 510 F.2d 414 (8th Cir. 1975)). "When declaratory and injunctive relief is sought on behalf of a class, and when the benefits of the relief sought will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class." *Women's Health Center, Inc. v. Webster*, 670 F. Supp. 845 (E.D. Mo. 1987) (*aff'd on other grounds*, 871 F.2d 1377, 1384 (8th Cir. 1989)). *Accord Phelps v. Powers, 295 F.R.D. 349, 354 (S.D. Iowa 2013); Ad Hoc Committee to Save Homer G. Phillips Hosp. v. St. Louis*, 143 F.R.D. 216, 221 (E.D. Mo. 1992). Where "an uncomplicated injunctive suit will provide all relief that may be appropriate," *Ihrke* controls, and a court may decline to certify a class. *Suter v. Crawford*, 2007 U.S. Dist. LEXIS 4710 at *6 (W.D. Mo. Jan. 23, 2007).

In the event that Plaintiffs prevail, the requested declaratory and injunctive relief would inure to the benefit of all those similarly situated. Plaintiffs request a declaratory judgment to establish that failure to timely process applications and recertifications violates the applicable statutes and regulations. (Pls.' Am. Compl., pp 15-16, ¶¶ b)(1) and (2)). Plaintiffs seek injunctions to enforce the time frames for the application and eligibility determination process (*Id*. at p 16, ¶¶ c)(1) and (2)); and to enforce the regulatory remedies in cases of state fault. (*Id*. at pp 16-17, ¶¶ c)(3)).

As demonstrated above, fault is the crucial inquiry for determining a class here. However, because fault determinations are individualized and fact-specific, class certification is particularly inappropriate in this context. Nevertheless, if the Plaintiffs' case were to proceed on individual grounds, the Plaintiffs would adequately represent those similarly situated applicants whose applications and recertifications were delayed *through no fault of their own or through*

*appropriately cured fault*.  These are the similarly situated individuals whom Plaintiffs properly seek to represent in the first place.

The requested declaratory and injunctive relief would accrue to all those similarly situated in the absence of class certification under Rule 23(b)(2).  The broad declaration that the State has violated the applicable SNAP statutes and regulations would accrue to those similarly situated *regardless of class certification*.  In addition, injunctions ordering the State to comply with statutory and regulatory time frames and to comply with the regulatory regime requiring the issuance of retroactive benefits in cases of delay caused by the fault of the State would accrue to those similarly situated *regardless of class certification*.  Certification under Rule 23(b)(2) is unnecessary to advance the interests of Plaintiffs and all those similarly situated.

If this Court orders the State to comply with the mandatory regulatory time frames and regulatory remedial scheme, the State would be obliged to comply with respect to all those similarly situated, not merely the named Plaintiffs.  Similarly, any program-wide declaration not limited to the named Plaintiffs would apply to the processing of all applications.  Class certification in this case is simply not necessary.  An uncomplicated individual suit seeking the same declarations and injunctions will just as effectively provide Plaintiffs any requested relief for themselves and all those similarly situated to which they are entitled.  This Court should exercise its discretion to decline to certify Plaintiffs' proposed class.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that this Court deny the Plaintiffs' Amended Motion for Class Certification.

4:14-cv-03155-JMG-CRZ   Doc # 27   Filed: 10/07/14   Page 24 of 24 - Page ID # 275

KERRY WINTERER, as Chief Executive Officer of the Nebraska Department of Health and Human Services, and THOMAS PRISTOW, as Director of the Division of Children and Family Services, Defendants.

BY    JON BRUNING, #20351
Attorney General

BY    s/Michael J. Rumbaugh
Michael J. Rumbaugh, #13612
Assistant Attorney General
1221 N Street
Lincoln, NE  68508
Tel:  (402) 471-2989
Fax: (402) 471-4725
mike.rumbaugh@ago.ne.gov

Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2014, I electronically filed the foregoing with the clerk

of the court using the CM/ECF system which sent notification of such filing to the following:

Marc Cohan
Mary R. Mannix
Jenny R.A. Pelaez
National Center for Law and Economic Justice
275 Seventh Avenue, Suite 106
New York, NY 10001

Molly M. McCleery
James Goddard
Attorney at Law
Nebraska Appleseed Center
941 O Street
Lincoln, NE 68508

s/Michael J. Rumbaugh
Michael J. Rumbaugh
Assistant Attorney General

24