IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TAMI LEITING-HALL, individually and on behalf of herself and all others similarly situated; and ASHLEY DANKLEFF, <br><br> Plaintiffs, <br><br> vs. <br><br> KERRY WINTERER, as Chief Executive Officer of the Nebraska Department of Health and Human Services; and THOMAS PRISTOW, as Director of the Division of Children and Family Services, Nebraska Department of Health and Human Services; <br><br> Defendants. | **4:14CV3155** <br><br><br> **FINDINGS AND RECOMMENDATION** |

This matter is before the court on the defendants' amended motion for class certification, (Filing No. 20).  For the reasons set forth below, the motion should be granted.


BACKGROUND


Plaintiffs Tami Leiting-Hall and Ashley Dankleff are indigent individuals seeking benefits from the Supplemental Nutrition Assistance Program ("SNAP") – commonly known as food stamps – administered by the Nebraska Department of Health and Human Services ("DHHS").   In Nebraska, the service delivery system for individuals who apply for public benefits, including SNAP, is ACCESSNebraska.  Through ACCESSNebraska, households receiving benefits may submit initial and renewal applications through local DHHS offices or online and may complete required interviews over the telephone.

The federal government provides funding to states for all SNAP benefits, and pays a portion of the administrative costs incurred by each state for the operation of the program. The state agency designated to administer the SNAP program must certify eligible applicants and issue SNAP benefits accordingly.

Under the implementing regulations, the DHHS has several responsibilities to ensure the timely processing of a household's application, including:

- Making information about SNAP requirements and procedures available to the applicant;

- Providing the applicants information about their rights and responsibilities regarding eligibility;

- Scheduling an interview of applicant households within 30 days after the application is filed;

- Notifying each household that misses its scheduled interview that the household is responsible for rescheduling the missed interview;

- Awarding retroactive benefits to qualifying households that missed their initial interview, but contacted DHHS during the initial 30-day review period to reschedule the interview during the 30-day application period;

- Informing households of the verification requirements, assisting households in acquiring the verification information, and giving households at least 10 days to provide the verification information;

- Providing ongoing benefits to eligible applicants by no later than 30 days after the household's date of application;

- Providing current recipient households notice of the expiration of their certification period and the need to re-apply for benefits;

- Allowing certain households whose eligibility for renewal is not determined by the end of its renewal period a 5 working day period in which to submit any missing verification; and

- Providing expedited benefits to qualifying households within a certain period of time.

See 7 C.F.R. § 273.2

2

Additionally, 7 C.F.R. § 273.2(g), (h) and (i) address timeliness in processing applications.  Generally, all applicants must receive approval or denial within 30 days of their applications.  If the state agency does not determine a household's eligibility and provide an opportunity to participate within 30 days of the initial application, the state agency must determine the cause.  In cases of household delay, the state agency must send the applicant either a notice of denial or a notice that the application is pending.  7 C.F.R § 273.2(h)(2)(i)(A).  If the delay is the fault of the agency, the agency must inform the applicant that the application is pending by the 30th day after the application has been filed.  7 C.F.R. § 273.2(h)(3)(i).  Applicants entitled to receive expedited benefits are entitled to begin receiving benefits by the seventh day after their application is filed.  7 C.F.R. § 273.2(i)(3)(i).

Plaintiff Leiting-Hall alleges she submitted a renewal application for SNAP benefits on June 16, 2014 and submitted verification information that same day or the following day.  (Filing No. 19, ¶¶ 65-67 at CM/ECF p. 12).  On July 14, 2014, Leiting-Hall alleges ACCESSNebraska informed her that her application was pending and she should consider utilizing other community resources like the food bank or soup kitchen.  As of August 29, 2014, Leiting-Hall asserts she had not received SNAP benefits for the month of July, despite being eligible.

Plaintiff Dankloff and her husband applied for SNAP benefits online through the ACCESSNebraska system on June 13, 2014.  Plaintiff Dankloff alleges she submitted paystub information but was not granted an interview until August 28, 2014 and, as of August 29, 2014, Plaintiff Dankloff and her household had not received SNAP benefits, despite her allegation the household was otherwise eligible.

Plaintiff's initiated this action seeking injunctive relief and seeking the court to declare DHHS' alleged practices of failing:

3

(1)     to process all initial application for SNAP, including expedited SNAP, and to provide benefits to those eligible, within the time frames required by law, violate plaintiffs' rights under 7 U.S.C. §§ 2020(e)(3) and (9) and implementing regulations . . .; and

(2)     to ensure a) that SNAP households have the right to re-apply and complete the application process in time to receive benefits; and b) that Defendants determine such households' eligibility within the mandated time frames and provides SNAP benefit to those eligible violate 7 U.S.C. § 2020(e)(4) and implementing regulations . . .

Plaintiffs also request the court enjoin Defendants from failing to:

(1)     ensure that SNAP applicants have the right to apply, including the right to apply for recertification, and to complete the application process in time to receive SNAP benefits within the federally mandated thirty day time frames; and

(2)     determine such households' eligibility within the mandated time frames and provide SNAP benefits within the mandated thirty day time frames to those eligible; and

(3)     identify those SNAP households whose rights to apply and receive SNAP benefits timely have been violated and restore to such households the SNAP allotments that Defendants have wrongfully withheld from them, as required by federal SNAP law.

Plaintiffs also seek to have their case certified as a class action.  The putative class is defined by Plaintiffs as:  All Nebraska residents who since January 1, 2012 have applied, are applying, or will apply for initial and renewal SNAP benefits.

ANALYSIS

4

Fed. R. Civ. P. 23(a) provides that no class action may be certified unless the court determines:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

If the requirements under section (a) are met, the court must also determine whether one of the three subsections of Rule 23(b) have been met.  In this case, Plaintiffs assert class certification is proper under Fed. R. Civ. P. 23(b)(2), which provides a class action may be maintained if:

> The party opposing the class has acted or refused to act on the grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

"[T]he court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied."   Elizabeth M. v. Montenez 458 F.3d 779, 783-84 (8th Cir. 2006)(citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)).

> The court may not consider the factual merits or weaknesses of plaintiffs' underlying claims when determining if a class should be certified. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). However, a class determination "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " Falcon, 457 U.S. at 160, 102 S.Ct. 2364 (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)).

Carson P. ex rel. Foreman v. Heineman, 240 F.R.D. 456, 491 (D. Neb. 2007)

"Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action." Caroline C. By and Through Carter v. Johnson, 174 F.R.D. 452, 459 (D. Neb. 1996)(internal quotations omitted).  That is, the class

membership must be ascertainable under an objective standard and "must not be so broadly defined that it encompasses individuals with little connection to the claims at issue, and the boundaries of the class must not be amorphous." Id.

ANALYSIS

Defendants have raised several objections to Plaintiffs proposed putative class. Each will be addressed in turn.

Class definition.

Defendant's assert the "proposed class is not ascertainable because the Court would be required to resort to lengthy, individualized inquiries in order to identify class members." Filing No. 27 at CM/ECF p. 7. The main thrust of Defendants argument is that the class is not ascertainable because the defendants are not responsible for the untimely processing of applications when the applicant is at fault; that is, when the applicant has failed to provide the necessary information to HHS or has not submitted to an interview.

Defendants argument is misplaced. As discussed below, the determination of fault or why HHS was unable or unwilling to timely process applications is better addressed under the named requirements of Rule 23 and as a question of standing. The question that must be answered about class definition is whether members of the putative class can be ascertained on an objective standard. See Caroline C., 174 F.R.D. at 459.

In this case, there is no question the proposed class is ascertainable by objective standards – i.e., anyone who has applied or will apply for SNAP benefits since January 1, 2012. There is no intricate individual factual inquiry necessary to determine who has applied for SNAP benefits within the relevant time period. Cf Jamie S. v. Milwaukee Public Schools, 668 F.3d 481, 496 (7th Cir. 2012)(discussing the difficulties in defining a class based on individual inquiries necessary for a determination if a class member was disabled);

6

In re Teflon Products Litigation, 254 F.R.D 354 (S.D. Iowa 2008).  Rather the definitional boundaries are clear cut.  Individuals have either applied for benefits or they have not, and it will not take a detailed inquiry to make that determination.

Rule 23(a) requirements.

Plaintiffs must also meet the requirements of Rule 23(a).

1.    Numerosity.

Plaintiff contends "Thousands of Nebraskans apply for SNAP benefits each month and, once deemed eligible, are subject to having their eligibility recertified every six months."  (Filing No. 19 at CM/ECF p. 3).  Evidence submitted by Plaintiffs indicates in March 2014 alone there were 22,122 applications.  (Filing No. 22-2 at CM/ECF p. 6).  The parties do not dispute, and the court agrees, the numerosity requirement of class certification has been met.

2.    Commonality.

The defendants have challenged the Rule 23(a)(2) commonality requirement.  Under Rule 23(a)(2) the Plaintiff must demonstrate the existence of common questions of law or fact among the members of the class.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011).

> This does not mean merely that they have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

7

> "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Nagareda, supra, at 132.

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)

In this case, Defendants argue the commonality requirement has not been met, because various factual scenarios may affect the timing of the application or recertification process.  Plaintiffs counter that the individual class members are all subject to the same general harm – not having their applications processed in the time required by federal law.

Plaintiffs rely heavily on the case of Like v. Carter, 448 F.2d 798, 802 (8th Cir. 1971). In Like, the Eighth Circuit, plaintiffs sought to certify a class including "eligible St. Louis welfare recipients whose applications have not been acted upon within 30 days after filing." Like, 448 F.2d at 802.  Without further discussion, the court found common questions of law "such as the interpretation and validity of the state and federal statutes and regulations are present."

However, Plaintiff has also identified, and the court has found, cases from several other courts certifying classes in analogous situations.  For instance, in Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993), the court approved the certification of a class consisting of "all current and future Vermont applicants for assistance from the Food Stamp, ANFC, and Fuel Assistance Programs."  Id. at 934.  The case was based on the state agency's failure to process applications in a timely fashion.  The court upheld the certification, finding the requirements of commonality and typicality to be met based on the plaintiffs challenge to Vermont's implementation of the Food Stamp Program and its failure to timely process application and make a determination of benefits.

8

In Reynolds v. Giuliani, 118 F. Supp. 2d 352, 387 (S.D.N.Y.) the court certified a class consisting of "all New York City residents who have sought, are seeking, or will seek to apply for food stamps, Medicaid, and/or cash assistance at Job Center." Reynolds, 118 F. Supp. 2d at 387. The Reynolds court addressed the commonality requirement and found that the common question of "whether defendants process applications for food stamps, Medicaid, and cash assistance in accord with applicable federal and state laws" was sufficient to meet the requirement of Fed. R. Civ. P. 23(a)(2). In so holding, the court held " ' the myriad [of] constitutional, regulatory and statutory provisions invoked by the plaintiffs are properly understood as creating a single scheme for the delivery of . . . welfare and as setting standards of conduct for those charged with providing such services – standards the defendants are alleged to have violated in a manner common to the plaintiff class. . . ." Reynolds, 118 F. Supp. 2d at 390 (quoting Marisol A. Giuliani, 126 F.3d 372, 376 (2d. Cir. 1997). The court further noted that "variations in fact patterns of individual plaintiffs do not vitiate the commonality and typicality claims." Id. at 389.

In D.G. ex rel. Stickland v. Devaughn, 594 F.3d 1188 (10th Cir. 2010), the court certified a class consisting of "all children who are or will be in the legal custody of [Oklahoma Department of Human Services] due to a report or suspicion of abuse or neglect or who are or will be adjudicated deprived due to abuse or neglect." D.G. ex rel. Stickland, 594 F.3d at 1192. Plaintiffs alleged the Oklahoma agency had inadequate monitoring policies in place to monitor the safety of the plaintiff children. The court found that "[a]ll class members, by virtue of being in [Oklahoma Department of Human Services'] care, are subject to the purportedly faulty monitoring policies . . . regardless of their individual differences." Id. at 1196. Even if the class members had not experienced actual harm, the D.G. court found it was sufficient that they were exposed to the harm by entering into the state agency's custody. Id. at 1196.

In this case, Plaintiffs have submitted evidence that all applicants for SNAP benefits are exposed to the same harm – the failure of HHS to process their applications in a timely fashion due to its current procedures and policies. For instance, Plaintiffs submitted the

9

Nebraska SNAP "Timeliness Corrective Action Plan" in which the Nebraska Department of Health and Human Services noted 31% of the applications for SNAP benefits were not timely processed for the year 2013.   (Filing No. 22-2 at CM/ECF p. 195).   The report identified several areas in which the processing of expedited applications was deficient including lack of training for application management staff, lack of proper screening of electronic expedited applications, and various worker delays in the assigning of cases and conducting interviews.   (Filing No. 22-2).   Further, the same report noted that applications were not being timely denied.   (Filing No. 22-2 at CM/ECF p. 13).

The regulations provide certain timeframes in which applications must be approved, denied or deemed pending – regardless of whether any delay has occurred and whether any delay was the fault of the DHHS or the applicant.   Thus, all applicants for SNAP benefits are exposed to the same potential harm and no inquiry into individual circumstances is necessary.   This court finds the reasoning in the Reynolds court persuasive – the statutory and regulatory scheme sets standards for those in charge of implementing the SNAP program.   Plaintiffs allege those standards have been violated.   All applicants are exposed to the problems identified by Plaintiffs in the processing of applications – such as improper training and worker delays – and thus, the commonality prong of Rule 23(a) has been met.

3.    Typicality.

Typicality exists if there are other members of the class who "have the same or similar grievances as the plaintiff."   Alpern v. UtiliCorp United, Inc. 84 F.3d 1525, 1540 (8th Cir. 1996).   "The commonality and typicality requirements of Rule 23(a) tend to merge."   Falcon, 457 U.S. at 157, n.13.   Minor factual differences will not necessarily preclude a finding of typicality when "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented."   Robidoux v. Celani, 987 F.2d 931, 936-37 (2d. Cir. 1993).

Many of the reasons stated above regarding commonality apply equally to the typicality requirement.   In this case, the unlawful conduct of which Plaintiffs complain affects the class as a whole.   The alleged problems and delay with SNAP application processing are systemic and conceivably impact any individual applying for benefits. Regardless of whether the application is approved or denied, the applicants are entitled to a timely decision.  The named plaintiffs' claims regarding the delay in any decision regarding their SNAP benefits is therefore typical of the putative class.

4.      Adequacy of Representation.

Under Rule 23(a)(4) the named plaintiffs must show:

(1)      the representatives and their attorneys are able and willing to prosecute the action completely and vigorously; and

(2)      each representatives interest are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge.

Carson P. ex rel. Foreman, 240 F.R.D. at 509.

Named Plaintiffs Leiting-Hall and Dankleff have demonstrated they are willing to litigate the matter vigorously, and as discussed throughout this opinion, their claims are sufficiently similar to the class members that their goals and viewpoints will align.  That is, each member of the class has an interest in ensuring their respective applications for SNAP benefits will be processed in a timely fashion and, if eligible, they will receive their benefits in a timely fashion as well.

Rule 23 (b)(2).

Fed. R. Civ. P. (b)(2) allows class certification for those seeking injunctive or declaratory relief.

11

> Class certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive. Although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive. <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 143 (3d Cir.1998). Because "unnamed members are bound by the action without the opportunity to opt out" of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class. <u>Id.</u> at 142–43. A "suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently." <u>Id.</u> (citation and quotation omitted); <u>see also Lemon v. Int'l Union of Operating Eng'rs</u>, 216 F.3d 577, 580 (7th Cir.2000) (same). "At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness .... Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a(b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender." <u>Holmes v. Cont'l Can Co.</u>, 706 F.2d 1144, 1155 n. 8 (11th Cir.1983) (citation and quotation omitted).

In re St. Jude Med., Inc., 425 F.3d 1116, 1121-22 (8th Cir. 2005).

Defendants argue there is no cohesiveness because many of the putative class members have not suffered any harm. But that is not the key consideration. Rather, the court must assess whether the class members are "subject to the very practice or policy of the defendant that is being challenged in the law suit." Huey v. Wells Fargo & Co., 295 F.R.D. 332, 345 (S.D. Iowa 2013). "What is important is the relief sought by the named plaintiffs should benefit the entire class." Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 59 (3d Cir. 1994). "The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are unable to vindicate their own rights." Baby Neal, 43 F.3d at 64.

In this case plaintiffs have alleged a widespread and systemic deficiency in the DHHS' processing of applications. As evidenced by the DHHS' own review and plan of

12

action, the DHHS alleged deficiencies in processing applications are common to the group of applicants as a whole and any relief afforded will be to the benefit of the entire group. Accordingly, the requirements of (b)(2) have been met.  See Robidoux, 987 F.2d at 934 (2d Cir. 1993)(certifying a class challenging food stamp regulations under Rule 23(b)(2)); Reynolds, 118 F. Supp. 2d at 390-91(same). See also Wright & Miller 7AA Fed. Prac. & Proc. Civ. § 1775 n. 47 (citing cases in which challenges to various aspects of food stamp programs were determined suitable for class certification under Rule 23(b)(2)).

Standing.

Defendants argue many of the proposed class members do not have standing necessary to participate in this suit.  Defendants assert many of the class members have not suffered harm and therefore cannot be a part of the class.

Defendant misconstrues what is required of the class representatives and the putative class members, particularly in a class action certified under Rule 23(b)(2).  "To have Article III standing to seek prospective relief, plaintiffs must show they are likely to suffer future injury that will be remedied by the relief sought." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (internal citations omitted).  A class may be comprised of members who have not yet suffered harm, but are exposed to the potential harm the class action suit is designed to remedy.  See, e.g., Caroline C., 174 F.R.D. at 461 (listing cases in which courts held individuals did not have to wait until they were actually harmed if they were subject to a practice or policy that in the future would subject them to harm).  "That a class possibly or even likely includes persons unharmed by defendant's conduct should not preclude certification." D.G. ex rel. Stricklin, 594 F.3d at 1201.  "So long as the challenged practices are based on grounds that apply generally to the class, class certification under Rule 23(b)(2) is proper even if . . . it is conceivable some class members have not been . . . exposed to risk of harm." Id.

13

In this case, it is true not all members of the putative class have suffered harm. However, all applicants are entitled to timely processing of their applications and successful applicants for SNAP benefits are entitled to receive their benefits in a timely manner, with recertification of eligibility every six months.   Accordingly, based on the plaintiffs' allegations, the putative class members have experienced or are exposed to the risk of harm by the defendant's policy and procedural shortcomings in managing the SNAP program.  The appropriate remedy is best sought through a class action.

Moreover, the named representatives have Article III standing to bring the class action.  It has long been settled that the Food Stamp Act has created enforceable rights within the meaning of 42 U.S.C. § 1983 and "aggrieved individuals have a . . .  right of action to enforce state compliance with the Act." Victorian v. Miller, 813 F.2d 718, 724 (5th Cir. 1987).  Plaintiffs in this case applied for SNAP benefits, alleged they are eligible to receive the benefits, and have suffered harm and will continue to suffer harm by Defendants' failure to timely decide their claims.  Plaintiffs have the requisite standing to bring this cause of action.

Necessity of class action.

Defendants argue that class certification is not necessary because if the requested relief is granted, it will be applicable to all those individuals similarly situated to the plaintiffs.  In Ihrke v. Northern States Power Co., 459 F.2d 566, 572 (8th 1972) the Eighth Circuit found that a court may decline to certify a class where "[n]o useful purpose would be served by permitting [a] case to proceed as a class action."  Some courts have determined that where the benefits of broad injunctive and declaratory relief will benefit all members of a proposed class the court should decline to certify a class.  See Women's Health Center, Inc. v. Webster, 670 F. Supp. 845 (E.D. Mo. 1987); see also Phelps v. Powers, 295 F.R.D. 349, 354 (S.D. Iowa 2013).

14

In this case, the court believes class certification is appropriate.  As Reynolds acknowledged in a factually similar case, "[t]his case involved a fluid class where the claims of the named plaintiffs may become mooted prior to completion of the litigation." 118 F. Supp. 2d at 391. For instance, if the named plaintiffs financial situations change such that they no longer need food stamps their claims could potentially become moot and the case likely dismissed without the alleged harm being remedied for those similarly situated. Further, "one of the purposes of supporting class actions is to eliminate 'the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.' " See Bowlin v. Montanez, case no. 4:04cv3218, Filing No. 62 at CM/ECF p. 6 (D. Neb. March 1, 2005)(Hon. Laurie Smith Camp)(quoting DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176 (8th Cir. 1995)). Certifying a class in this case serves the exact need identified by the Eighth Circuit and obviates the risk that individual claims will become moot prior to relief being granted.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the Plaintiffs' amended motion for class certification (Filing No. 20) should be granted.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 11th day of February, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.